Gregory A. Cross
VENABLE LLP
750 E. Pratt Street
Suite 900
Baltimore, Maryland 21202

Rishi Kapoor
Arie Peled
VENABLE LLP
Rockefeller Center
1270 Avenue of the Americas
New York, New York 10020

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WELLS FARGO BANK, NATIONAL ASSOCIATION, as Trustee, on behalf of the registered holders of CSAIL 2017-CX10 Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2017-CX10, and the holder(s) of the related Companion Notes, acting by and through its special servicer, CWCapital Asset Management LLC,<br><br>        Plaintiff,<br><br>   v.<br><br>GC SHL, LLC; NEW YORK CITY ENVIRONMENTAL CONTROL BOARD; NEW YORK CITY DEPARTMENT OF FINANCE; and JOHN DOES # 1 – 50, said John Doe defendants being fictitious and unknown to Plaintiff, it being intended to name all other parties who may have some interest in or lien upon the premises sought to be foreclosed,<br><br>        Defendants. | Case No.: 1:21-cv-8940 |

## COMPLAINT

Plaintiff Wells Fargo Bank, National Association, as trustee, on behalf of the registered

holders of CSAIL 2017-CX10 Commercial Mortgage Trust, Commercial Mortgage Pass-Through

Certificates, Series 2017-CX10 and the holder(s) of the related Companion Notes ("Plaintiff"),

53416059

acting by and through its Special Servicer, CWCapital Asset Management LLC, files this Complaint (the "Complaint") against defendants, and in support thereof alleges as follows:

## PARTIES

1.    Plaintiff Wells Fargo Bank, National Association, acting solely in its capacity as trustee, is a national banking association that serves as the trustee of a commercial mortgage-backed securities trust. Plaintiff's main office, as specified in its Articles of Association, is located in Sioux Falls, South Dakota.

2.    Defendant GC SHL, LLC ("Borrower") is a limited liability company organized under the laws of the State of Delaware. Borrower is named as a defendant to extinguish all estate, right, title, and interest it holds, including its interest as the record fee owner, in and to certain real property located in the Borough of Manhattan, and within the City, County, and State of New York, at 848 Washington Street, New York, New York 10014, also known as Block 645, Lot 11 on the Tax Map for the County of New York, and commonly known as The Standard, High Line hotel (the "Real Property"), and the premises, fixtures, improvements, equipment, furnishings and related personal property located thereon (the "Personal Property," and together with the Real Property, as more particularly described in the Mortgage (as defined herein), the "Property"), and to determine its liabilities and obligations under the Loan Documents (as defined herein).

3.    Defendant New York City Environmental Control Board ("NYC-ECB") is an agency or instrumentality of the City of New York. NYC-ECB is made a defendant due to possible unpaid amounts that may be owed in connection with the Property and for the purpose of foreclosing liens against the Property which accrued or which may accrue subsequent to the lien of the Mortgage (as defined herein) by virtue of possible unpaid amounts which are or may be due or may become due to NYC-ECB from any owner of record of the Property, including without limitation the following violations:

- 2 -

      i.        Violation No. 45180218Y in the amount of $120.24 plus interest;

      ii.       Violation No. 45180219X in the amount of $100.24 plus interest; and

      iii.     Violation No. 187013265 in the amount of $200.00 plus interest.

4.      Defendant New York City Department of Finance ("NYC-DOF") is an agency or instrumentality of the City of New York.  NYC-DOF is made a defendant due to possible unpaid amounts that may be owed in connection with the Property and for the purpose of foreclosing liens against the Property which have accrued or which may accrue subsequent to the lien of the Mortgage (as defined herein) by virtue of possible unpaid amounts which are or may be due or may become due to NYC-DOF from any owner of record of the Property, including without limitations any unpaid amounts and/or liens against the Property resulting from the following judgments in favor of NYC-DOF:

      i.        Judgment in the amount of $621,010.21, docketed on or about August 25, 2020 under Index No. 539191;

      ii.       Judgment in the amount of $57,904.73, docketed on or about September 9, 2020 under Index No. 558598; and

      iii.     Judgment in the amount of $8,287.53, docketed on or about February 23, 2021 under Index No. 582542.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 exclusive of interest, costs, and attorneys' fees, and complete diversity of citizenship exists between Plaintiff, a citizen of South Dakota, and each of the defendants, which are citizens or subjects of New York and the People's Republic of China ("PRC").

6.      For purposes of diversity jurisdiction under 28 U.S.C. § 1348, Plaintiff is a citizen of South Dakota because it is a national banking association whose main office, as specified in its

53416059

Articles of Association, is located in the State of South Dakota.

7.      Upon information and belief, based on, among other things, a certain Borrower's Certificate, dated as of October 27, 2017, executed in connection with the Loan (as defined herein), Borrower is a citizen of the PRC.

8.      According to the Borrower's Certificate, Borrower is a limited liability company whose sole member is non-party GC SHL HOLDING, LLC, a Delaware limited liability company ("Holdco LLC").  Holdco LLC, in turn, has two members: (1) non-party GC SHL Investment, LLC ("Investment LLC") and (2) non-party GC SHL GP, LLC ("GP LLC"), both of which are Delaware limited liability companies.  The sole member of Investment LLC is GP LLC.  The sole member of GP LLC is non-party GG Land Investment, Ltd., LLC, a Nevada limited liability company ("GG Investment LLC").  The sole member of GG Investment LLC is non-party Goodwin Gaw ("Mr. Gaw").  Mr. Gaw is the Borrower's principal and a foreign individual who, upon information and belief, based on publicly available information, is domiciled in Hong Kong and is a citizen of the PRC.

9.      Defendants NYC-ECB and NYC-DOF are citizens of the State of New York.

10.     This Court has personal jurisdiction over the defendants pursuant to Federal Rule of Civil Procedure 4, and CPLR 301, 302(a)(1) and 302(a)(4).  This Court also has personal jurisdiction over the Borrower under Section 10.6(b) of the subject Loan Agreement (as defined herein), pursuant to which the Borrower irrevocably submitted to the jurisdiction of this Court.

11.     Venue is proper in this district pursuant to 28 U.S.C. § 1391, because the property that is the subject of this action is located in the Southern District of New York, in New York County, New York, and pursuant to Section 10.6(b) of the subject Loan Agreement (as defined herein).

53416059

**FACTS**

I.      **The Loan and Related Loan Documents**

12.     On or about October 27, 2017, Natixis Real Estate Capital LLC ("Original Lender") made a loan to Borrower in the original principal amount of $170,000,000 (the "Loan").

13.     To evidence its indebtedness under the Loan, Borrower, as obligor, duly executed, acknowledged and delivered to Original Lender, as obligee, a Consolidated, Amended and Restated Promissory Note, dated as of October 27, 2017, in the original principal amount of $170,000,000 (the "Original Note").   The Original Note consolidated certain pre-existing promissory notes under which Borrower was obligated into a single promissory note and obligated Borrower to pay Original Lender, its successors or assigns, the principal sum of $170,000,000, plus interest and other amounts owing under the Loan.

14.     A true and correct copy of the Original Note is attached hereto as **Exhibit 1**.

15.     To secure its payment and performance obligations under the Loan, Borrower, as obligor and mortgagor, executed and delivered to Original Lender, as obligee and mortgagee, a Consolidated, Amended and Restated Mortgage, Assignment of Leases and Rents and Security Agreement dated as of October 27, 2017 (the "Mortgage").   The Mortgage consolidated certain pre-existing mortgages to create a single first-priority mortgage lien on the Property and granted a security interest in the Property to Original Lender, its successors or assigns, to secure Borrower's obligations under the Loan, including its obligations under the Original Note and Mortgage.

16.     A true and correct copy of the Mortgage is attached hereto as **Exhibit 2**.

17.     The Mortgage was duly filed and recorded in the Office of the City Register of the City of New York on November 6, 2017, under CRFN 2017000410272.

18.     Upon information and belief, the applicable recording taxes due, if any, were duly paid at the time of recording the Mortgage.

- 5 -

53416059

19.     To further secure its payment and performance obligations under the Loan, including its obligations under the Original Note and Mortgage, Borrower executed and delivered to Original Lender an Assignment of Leases and Rents dated as of October 27, 2017 (the "ALR"), pursuant to which Borrower assigned to Original Lender, its successors and assigns, all of Borrower's right, title, and interest in and to, among other things, all leases and rents or other revenue derived from the Property.

20.     A true and correct copy of the ALR is attached hereto as **Exhibit 3**.

21.     The ALR was duly filed and recorded in the Office of the City Register of the City of New York on November 6, 2017, under CRFN 2017000410273.

22.     The Loan is further governed by a Loan Agreement, dated October 27, 2017, that Borrower executed and delivered to Original Lender (the "Loan Agreement," and together with all other documents and agreements referred to, created, or contemplated thereunder, including but not limited to the Original Note, the replacement severed and companion promissory notes executed and delivered by Borrower (discussed *infra*), the Mortgage, and the ALR, the "Loan Documents"), pursuant to which the Borrower agreed to comply with additional terms, provisions, and obligations with respect to the Loan for the benefit of the Original Lender, its successors and assigns.

23.     A true and correct copy of the Loan Agreement is attached hereto as **Exhibit 4**.

24.     Pursuant to a Note Splitter and Loan Modification Agreement effective as of October 27, 2017 (the "Note Splitter Agreement"), the Original Note in the principal amount of $170,000,000 was split and severed into four separate promissory notes: (i) Replacement Severed Promissory Note A-A in the principal amount of $45,000,000 ("Note A-A"), (ii) Replacement Severed Promissory Note A-B in the principal amount of $58,400,000 ("Note A-B"),

53416059

(iii) Replacement Severed Promissory Note B-A in the principal amount of $36,600,000 ("Note B-A"), and (iv) Replacement Severed Promissory Note B-B in the principal amount of $30,000,000 ("Note B-B," and together with Note B-A, the "Companion Notes") (Note A-A, Note A-B, Note B-A, and Note B-B, collectively, the "Notes").

25.     Borrower executed and delivered the Notes to Original Lender and remains obligated to pay Original Lender, its successors or assigns the sums due thereunder.

26.     The Notes evidence the same indebtedness evidenced by the Original Note and fully substitute and replace the Original Note in its entirety.  Borrower's obligations under the Notes are governed and secured by the Loan Agreement, the Mortgage and the other Loan Documents.

27.     A true and correct copy of the Note Splitter Agreement is attached hereto as **Exhibit 5**.

28.     The Notes, Mortgage, ALR, and Loan Agreement are governed by New York law.

**Transfer of the Loan to Plaintiff**

29.     Pursuant to various written assignments, Original Lender assigned and transferred all right, title, and interest in and to the Loan and the Loan Documents to Plaintiff (in its capacity as trustee on behalf of the registered holders of CSAIL 2017-CX10 Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2017-CX10, and the holder(s) of the related Companion Notes).

30.     Original Lender delivered Note A-A and Note A-B to Plaintiff and executed an Allonge to Note A-A (the "Note A-A Allonge") and an Allonge to Note A-B (the "Note A-B Allonge"), each in favor of Plaintiff (solely in its capacity as trustee on behalf of the registered holders of CSAIL 2017-CX10 Commercial Mortgage Trust, Commercial Mortgage Pass-Through

53416059

Certificates, Series 2017-CX10).

31.    The Note A-A Allonge is affixed to Note A-A, a true and correct copy of which is attached hereto as **Exhibit 6**.

32.    The Note A-B Allonge is affixed to Note A-B, a true and correct copy of which is attached hereto as **Exhibit 7**.

33.    Original Lender assigned its interest in the Mortgage and underlying consolidated mortgages to Plaintiff pursuant to an Assignment of Mortgage dated as of November 30, 2017 (the "Assignment of Mortgage").

34.    The Assignment of Mortgage was duly filed and recorded in the Office of the City Register of the City of New York on January 16, 2018, under CRFN 2018000016796.

35.    A true and correct copy of the Assignment of Mortgage is attached hereto as **Exhibit 8**.

36.    Original Lender assigned its interests in the ALR to Plaintiff pursuant to an Assignment of Assignment of Leases and Rents dated as of November 30, 2017 (the "ALR Assignment").

37.    The ALR Assignment was duly filed and recorded in the Office of the City Register of the City of New York on January 16, 2018, under CRFN 2018000016797.

38.    A true and correct copy of the ALR Assignment is attached hereto as **Exhibit 9**.

39.    Original Lender also assigned its interests in and to the Loan, the Loan Agreement and all other Loan Documents to Plaintiff pursuant to a General Assignment (the "General Assignment").

40.    A true and correct copy of the General Assignment is attached hereto as **Exhibit 10**.

41.    The relative rights and priorities of Plaintiff, as holder of Note A-A and Note A-B,

53416059

and the holder(s) of the related Companion Notes, with respect to the administration of the Loan, receiving distributions of Loan payments, and enforcing remedies against Borrower, among other things, are governed by a Co-Lender Agreement dated as of November 30, 2017 (the "Co-Lender Agreement").

42.     Under the Co-Lender Agreement, the holders of each of the Notes granted exclusive authority to administer the Loan and to prosecute this action on behalf of such noteholders to Plaintiff, as holder of Note A-A.  Specifically, pursuant to Sections 2(a) and 5(a) of the Co-Lender Agreement, Plaintiff has "sole and exclusive authority with respect to the administration of, and exercise of rights and remedies with respect to, the [] Loan, including, without limitation, the sole authority to . . . institute any foreclosure action or other remedy," and "[e]ach Note Holder [has] irrevocably appoint[ed] . . . [Plaintiff] . . . as such Note Holder's attorney-in-fact to sign any documents reasonably required with respect to the administration and servicing of the Mortgage Loan on its behalf . . . ."

43.     All prerequisites under the Co-Lender Agreement, if any, to bringing this lawsuit have been satisfied.

44.     CWCapital Asset Management LLC is the Special Servicer of the Loan and attorney-in-fact on behalf of the Plaintiff, and in such capacities has the right to initiate, prosecute, and maintain this action on behalf of Plaintiff.

**The Payment Defaults**

45.     Pursuant to Section 2.2.1 of the Loan Agreement, among other provisions of the Loan Documents, Borrower was obligated to pay installments of interest on the fifth day of each calendar month (or the preceding business day) (the "Payment Date") commencing on December 5, 2017 and continuing through and including October 5, 2027.

46.     Borrower failed to pay the full amount due under the Loan Documents on May 5,

- 9 -

2020, and on each Payment Date thereafter through and including October 5, 2021 (each a "Payment Default," and collectively, the "Payment Defaults").

47.     Each of the Payment Defaults constitutes a breach of Borrower's obligations under the Loan and an Event of Default pursuant to Section 8.1(a) of the Loan Agreement and Section 1 of the Mortgage, among other provisions of the Loan Documents.

48.     Pursuant to Section 8.2.1 of the Loan Agreement and Section 10(a) of the Mortgage, among other provisions of the Loan Documents, Borrower expressly waived its right to receive notice or demand regarding the Payment Defaults or the exercise of any remedies by Plaintiff as a result thereof.

49.     Nevertheless, on or about June 25, 2020, Plaintiff sent Borrower a notice of default (the "Notice of Default"), notifying Borrower that it had committed an Event of Default under the Loan "by virtue of Borrower's failure to make the full monthly payments due and owing under the Loan and Loan Documents [] from and after May 5, 2020."

50.     A true and correct copy of the Notice of Default is attached hereto as **Exhibit 11**.

51.     Pursuant to Section 10(a) of the Mortgage, among other provisions of the Loan Documents, upon the occurrence of any Event of Default, Lender may, "without notice or demand," declare the entire outstanding balance of the principal sum of the Notes and all accrued and unpaid interest thereon and all other amounts due under the Loan Agreement and the other Loan Documents (the "Debt") "immediately due and payable."

52.     Nevertheless, on or about June 11, 2021, Plaintiff notified Borrower that the entire outstanding principal balance of the Loan, together with all accrued interest, including interest at the Default Rate (as defined herein) from the date of the earliest Event of Default, late charges, and Lender's costs and expenses, including attorneys' fees, disbursements and court costs, and all

other amounts owing under the Loan Documents, had been declared immediately due and payable (the "Acceleration Notice").

53.     A true and correct copy of the Acceleration Notice is attached hereto as **Exhibit 12**.

54.     Borrower has failed to pay the amounts due on the Loan in full and remains in default under the Loan Documents.

55.     Pursuant to Sections 2.5.1 and 5.17 of the Loan Agreement, among other provisions of the Loan Documents, Borrower is liable for and shall pay, in addition to all other sums owing under the Loan, all costs, expenses, and fees, including but not limited to reasonable attorneys' fees and expenses, incurred in connection with Plaintiff's enforcement and collection of the sums due from Borrower under the Loan.

### FIRST CAUSE OF ACTION
### (Foreclosure of the Mortgage)

56.     Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

57.     Borrower's Payment Defaults constitute Events of Default under the Loan Agreement, Mortgage and other Loan Documents, and entitle Plaintiff to exercise its contractual remedies under the Loan Documents to foreclose upon the Mortgage.  Section 10(a)(ii) of the Mortgage provides in relevant part that upon the occurrence of an Event of Default, Plaintiff may "institute a proceeding or proceedings, judicial or nonjudicial, to the extent permitted by law, by advertisement or otherwise, for the complete foreclosure of this Security Instrument, in which case the Property may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner."

58.     The full amount of the Debt is currently due and payable.

59.     Borrower has failed to pay the Debt.

- 11 -

60.     Pursuant to the Loan Documents and applicable law, the total unpaid balance of Borrower's obligations under the Loan Documents was estimated, as of April 5, 2021, to be at least $186,880,966.53, and includes (i) the unpaid total principal amount of $170,000,000, (ii) accrued and unpaid interest at the non-default rate ("Note Rate") in the approximate amount of $8,147,509.72, (iii) separate and additional default interest in the approximate amount of $7,909,722.22, and (iv) protective advances and various fees, costs and expenses totaling approximately $823,734.58, less certain funds held in suspense, reserve, or escrow accounts. Attorneys' fees and costs, due diligence report costs, title charges, and other amounts due and owing pursuant to the Loan Documents and applicable law continue to accrue.  Interest continues to accrue: (i) on Note A-A at the rate of 5.28377778% per annum, (ii) on Note A-B at the rate of 4.3% per annum, (iii) on Note B-A at the rate of 4.5% per annum, and (iv) on Note B-B at the rate of 5.0% per annum; for a cumulative overall accrual of interest at the Note Rate of 4.727% per annum on the unpaid balance of the Loan.  Default interest accrues on the indebtedness owing under each of the Notes at the additional rate of 5.00% per annum (the "Default Rate").   The amount of the Debt shall be recalculated at the appropriate stage of this case to reflect the total amount then due and owing under the Loan.

61.     In order to protect its security, Plaintiff may be compelled during the pendency of this action to pay charges affecting the Property.  Such sums paid by Plaintiff, together with interest thereon and any other amounts due under the Loan Documents as a result thereof, constitute part of the Debt due to Plaintiff under the Loan and Loan Documents, and, accordingly, Plaintiff requests that any such sums be added to the sums otherwise due under the Loan Documents.

62.     Each of the defendants herein have or claim to have some interest in, or lien upon the Property or some part thereof, which interest or lien, if any, is subject and subordinate to the

lien of Plaintiff's Mortgage sought to be foreclosed in this action.

63.     No other action or proceeding has been commenced or maintained or is now pending at law or otherwise for the foreclosure of the Mortgage, or for recovery of the sum evidenced by the Notes and secured by Mortgage or any part thereof.

64.     Section 9-x of New York's Banking Law is not applicable to the parties or Loan at issue in this action.

65.     All conditions precedent necessary to bring forth the claims set forth herein have been satisfied.

66.     Plaintiff requests that in the event that this action proceeds to a judgment of foreclosure and sale, the Property be sold subject to the following:

(a)     Any state of facts that an inspection of the Property would disclose;

(b)     Any state of facts that an accurate survey of the Property would show;

(c)     Covenants, restrictions, easements, and public utility agreements of record, if any;

(d)     Building and zoning ordinances or codes of the municipality, or any of its agencies or instrumentalities, in which the mortgaged Property is located and possible violations of such ordinances or codes;

(e)     Any rights of lawful tenants or persons lawfully in possession of the Property, except for Borrower and any tenants or occupants of the Property affiliated with Borrower;

(f)     Any equity of redemption of the United States of America to redeem the premises within 120 days from date of sale; and

(g)     Prior lien(s) of record, if any.

67.     Plaintiff's election to accelerate and declare immediately due and payable all unpaid amounts owing under the Loan and Loan Documents shall not be, or deemed to have been, waived, altered, released or changed by reason of this action, or by any payment received after the commencement of this action, and such election shall continue and remain effective.

- 13 -

53416059

WHEREFORE, Plaintiff respectfully requests:

(a)     that the defendants and all persons claiming under them, subsequent to the commencement of this action, be barred and foreclosed of and from all estate, right, title, interest, claim, lien, and equity of redemption of, in and to (A) the Property, as more particularly described in this Complaint, and each and every part and parcel thereof, including any personal property appurtenant thereto, (B) any and all leases, licenses, and/or occupancy agreements of any kind or nature in or to the Property or any portion thereof; that the Property may be decreed to be sold, according to law, in "as is'' physical order and condition, subject to the items set forth in paragraph 66 of this Complaint; that the monies arising from the sale thereof may be brought into Court; that Plaintiff may be paid the amount due on the Notes, Mortgage, and other Loan Documents, with interest, default interest, late charges, exit fees, and the expenses of such sale, including attorneys' fees, together with the costs, allowances, and disbursements of this action, and together with any sums incurred by Plaintiff or the holder(s) of the related Companion Notes pursuant to any term or provision of the Notes, Mortgage, and other Loan Documents set forth in this Complaint or to protect the lien of the Mortgage, together with interest and default interest upon those sums accruing from the dates of the respective payments and advances, so far as the amount of such monies properly applicable thereto will pay the same; that the Borrower may be adjudged to pay the whole residue, or so much thereof as permitted under the Loan Documents or the Court determines to be just and equitable, of the debt remaining unsatisfied after the sale and the application of the proceeds pursuant to the directions contained in such judgment;

53416059

that in the event Plaintiff possesses any other lien(s) against the Property either by way of judgment, junior mortgage or otherwise, Plaintiff requests that such other lien(s) shall not be merged in Plaintiff's cause(s) of action set forth in this Complaint but that Plaintiff shall be permitted to enforce the other lien(s) and/or seek determination of priority thereof in any independent action(s) or proceeding(s), including, without limitation, any surplus money proceedings; and that Plaintiff may have such other and further relief as may be just and equitable;

(b)     that, upon application therefor, this Court forthwith appoint a receiver in accordance with the provisions of the Mortgage;

(c)     Plaintiff's costs, expenses, fees, and disbursements of this action, including attorneys' fees, costs, and expenses; and

(d)     such other and further relief as the Court may deem just and proper.

*[remainder of page intentionally left blank; signature block follows]*

53416059

Dated: Baltimore, Maryland
November 1, 2021

Respectfully submitted,

**VENABLE LLP**

By: _____ */s/Gregory A. Cross* _____
Gregory A. Cross
750 E. Pratt Street
Suite 900
Baltimore, Maryland 21202
Tel.: (410) 244-7400
Fax: (410) 244-7742
gacross@venable.com

Rishi Kapoor
Arie Peled
Rockefeller Center
1270 Avenue of the Americas, 24th Floor
New York, New York 10020
Tel.: (212) 307-5500
Fax: (212) 307-5598
rkapoor@venable.com
apeled@venable.com

*Counsel for Plaintiff*

53416059