| NYC DEPARTMENT OF FINANCE<br>OFFICE OF THE CITY REGISTER<br><br>This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document. | <br>2017110100945003002E1FFC |
|---|---|

**RECORDING AND ENDORSEMENT COVER PAGE**  PAGE 1 OF 11

**Document ID:** 2017110100945003   **Document Date:** 10-27-2017   **Preparation Date:** 11-06-2017
**Document Type:** ASSIGNMENT OF LEASES AND RENTS
**Document Page Count:** 9

| PRESENTER: | RETURN TO: |
|---|---|
| TO BE PICKED UP BY COMMONWEALTH<br>COMMONWEALTH LAND TITLE INSURANCE CO.<br>685 THIRD AVENUE, 20TH FLOOR<br>NEW YORK, NY 10017<br>212-949-0100<br>NY170302 | TO BE PICKED UP BY COMMONWEALTH<br>COMMONWEALTH LAND TITLE INSURANCE CO.<br>685 THIRD AVENUE, 20TH FLOOR<br>NEW YORK, NY 10017<br>212-949-0100<br>NY170302 |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 645 | 11 | Entire Lot | 848 WASHINGTON STREET |

**Property Type:** COMMERCIAL REAL ESTATE

**CROSS REFERENCE DATA**

**CRFN:** 2004000415362
☒ Additional Cross References on Continuation Page

**PARTIES**

| ASSIGNOR: | ASSIGNEE: |
|---|---|
| GC SHL, LLC<br>818 WEST 7TH STREET, SUITE 410<br>LOS ANGELES, CA 90017 | NATIXIS REAL ESTATE CAPITAL LLC<br>1251 AVENUE OF THE AMERICAS<br>NEW YORK, NY 10020 |

**FEES AND TAXES**

| Mortgage : | | Filing Fee: | |
|---|---|---|---|
| Mortgage Amount: | $ 170,000,000.00 | $ | 0.00 |
| Taxable Mortgage Amount: | $ 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | 255 | $ | 0.00 |
| TAXES: County (Basic): | $ 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ 0.00 | $ | 0.00 |
| Spec (Additional): | $ 0.00 | | |
| TASF: | $ 0.00 | | |
| MTA: | $ 0.00 | | |
| NYCTA: | $ 0.00 | | |
| Additional MRT: | $ 0.00 | | |
| TOTAL: | $ 0.00 | | |
| Recording Fee: | $ 82.00 | | |
| Affidavit Fee: | $ 8.00 | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**
Recorded/Filed  11-06-2017 11:08
City Register File No.(CRFN):
2017000410273

*Annette M Hill*
*City Register Official Signature*

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2017110100945003002C1D7C

**RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION)** **PAGE 2 OF 11**

**Document ID: 2017110100945003** Document Date: 10-27-2017 Preparation Date: 11-06-2017
Document Type: ASSIGNMENT OF LEASES AND RENTS

**CROSS REFERENCE DATA**
**CRFN:** 2005000180765
**CRFN:** 2006000643090
**CRFN:** 2005000096310
**CRFN:** 2005000180766
**CRFN:** 2006000643091
**CRFN:** 2006000643092
**CRFN:** 2006000643093
**CRFN:** 2011000274338
**CRFN:** 2006000643095
**CRFN:** 2011000274340
**CRFN:** 2006000643097
**CRFN:** 2011000274339
**CRFN:** 2011000274341
**CRFN:** 2012000214664
**CRFN:** 2015000001665
**CRFN:** 2015000001667
**CRFN:** 2015000317072
**Document ID:** 2017110100945001
**Document ID:** 2017110100945002
**CRFN:** 2017000401587

THIS INSTRUMENT PREPARED BY
AND WHEN RECORDED RETURN TO:

Nelson Mullins Riley & Scarborough LLP
301 S. College Street, Suite 2300
Charlotte, North Carolina 28202
Attn: Jonathan J. Nugent, Esq.

*(SPACE ABOVE THIS LINE FOR RECORDER'S USE)*

# ASSIGNMENT OF LEASES AND RENTS

Dated and effective as of October 27, 2017

between

GC SHL, LLC,
as assignor

and

NATIXIS REAL ESTATE CAPITAL LLC,
as assignee

| | |
|---|---|
| Property Location: | 848 Washington Street, New York, New York<br>New York County |
| Block: 645 | Lot 11 |

## ASSIGNMENT OF LEASES AND RENTS

This ASSIGNMENT OF LEASES AND RENTS (this "*Assignment*") dated and effective as of October 27, 2017, is made by GC SHL, LLC, a Delaware limited liability company, having an address at 818 West 7th Street, Suite 410, Los Angeles, California 90017, as assignor ("*Borrower*"), to NATIXIS REAL ESTATE CAPITAL LLC, a Delaware limited liability company, having an address at 1251 Avenue of the Americas, New York, New York 10020, as assignee (together with its successors and assigns, "*Lender*").

R E C I T A L S:

WHEREAS, Borrower is the owner of fee simple title to that certain parcel of real property (the "*Premises*") described in **Exhibit "A"** attached hereto, together with the buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and other improvements now or hereafter located thereon (collectively, the "*Property*"); and

WHEREAS, Borrower and Lender have entered into a certain Loan Agreement, dated as of the date hereof (as amended, modified, restated, consolidated or supplemented from time to time, the "*Loan Agreement*"), pursuant to which Lender has agreed to make a secured loan to Borrower in the original principal amount of $170,000,000.00 (the "*Loan*"); and

WHEREAS, Borrower has executed that certain Consolidated. Amended and Restated Promissory Note in the principal amount of $170,000,000.00, made by Borrower to Lender respectively in the collective amount equal to the Loan (as the same may be amended, modified, restated, severed, split, consolidated, renewed, replaced, or supplemented from time to time, each, and as the context may require, collectively, the "*Note*"), which is secured by, *inter alia*, that certain Consolidated, Amended and Restated Mortgage, Assignment of Leases and Rents and Security Agreement (as amended from time to time, the "*Security Instrument*") on the Property; and, TO BE RECORDED SIMULTANEOUSLY HEREWITH.

WHEREAS, it is a condition to the obligation of Lender to make the Loan to Borrower pursuant to the Loan Agreement that Borrower execute and deliver this Assignment; and

WHEREAS, this Assignment is being given as additional security for the Loan; and

WHEREAS, capitalized terms used in this Assignment without definition have the respective meanings assigned to such terms in the Loan Agreement or the Security Instrument, as the case may be, the terms of each of which are specifically incorporated by reference herein.

NOW, THEREFORE, for good and valuable consideration, receipt of which by the parties hereto is hereby acknowledged, and additionally for the purpose of additionally securing the Debt, Borrower hereby assigns, transfers, conveys and sets over unto Lender, all right, title and interest of Borrower in and to all Leases and all Rents;

TO HAVE AND TO HOLD the same unto Lender, and its successors and assigns forever, upon the terms and conditions and for the uses hereinafter set forth.

And Borrower hereby further agrees as follows:

1. **Certain Representations, Warranties and Covenants.** Borrower represents, warrants and covenants to Lender that:

(a) The payment of the Rents to accrue under any Lease will not be waived, released, reduced, discounted or otherwise discharged or compromised by Borrower (provided, however, nothing herein shall be deemed to prohibit Borrower's right to waive receipt of late fees or default interest due under the Leases in the ordinary course of business);

(b) Borrower has not performed, and will not perform, any acts, and has not executed, and will not execute, any instrument that would prevent Lender from exercising its rights under this Assignment; and

(c) Borrower hereby authorizes and directs any tenant under any of the Leases and any successor to all or any part of the interests of any such tenant to pay directly to the Clearing Account, in accordance with the terms of the Loan Agreement, the Rents due and to become due under such tenant's Lease, and such authorization and direction shall be sufficient warrant to the tenant to make future payments of Rents directly to the Clearing Account in accordance with the terms of the Loan Agreement without the necessity for further consent by Borrower.

2. **Assignment; Deferred Exercise of Rights.**

(a) As part of the consideration for the Debt, Borrower does hereby absolutely and unconditionally assign to Lender all right, title and interest of Borrower in and to all present and future Leases and Rents, and this Assignment constitutes a present and absolute assignment and is intended to be unconditional and not as an assignment for additional security only. It is further intended that it not be necessary for Lender to institute legal proceedings, absent any requirements of law or regulation to the contrary, to enforce the provisions hereof. Borrower hereby authorizes Lender or its agents to collect the Rents; provided, however, so long as no Event of Default then exists, and subject at all times to the requirement that payments and deposits of Rents be made directly to the Clearing Account, Borrower shall have a revocable license, but limited as provided in this Assignment and in any of the other Loan Documents, to otherwise deal with, and enjoy the rights of the lessor under, the Leases.

(b) Upon the occurrence and during the continuance of an Event of Default, and without the necessity of Lender entering upon and taking and maintaining full control of the Property in person, by agent or by court-appointed receiver, the license referred to in Subsection (a) above shall immediately be revoked and Lender shall have the right at its option, to exercise all rights and remedies contained in the Loan Documents, or otherwise available at law or in equity.

3. **Rents Held in Trust by Borrower.** Rents held or received by Borrower shall be held or received by Borrower as trustee for the benefit of Lender only and shall be immediately deposited directly to the applicable Clearing Account in accordance with the terms of the Loan Agreement.

4. **Effect on Rights Under Other Documents.** Nothing contained in this Assignment and no act done or omitted by Lender pursuant to the powers and rights granted it hereunder shall be deemed to be a waiver by Lender of its rights and remedies under any of the other Loan Documents, and this Assignment is made and accepted without prejudice to any of the rights and remedies possessed by Lender under the terms of the other Loan Documents. The rights of Lender under the other Loan Documents may be exercised by Lender either prior to, simultaneously with, or subsequent to any action taken by it hereunder. This Assignment is intended to be supplementary to and not in substitution for or in derogation of any assignment of rents or grant of a security interest contained in any of the other Loan Documents.

5.  **Event of Default.** Upon or at any time after the occurrence and during the continuance of an Event of Default, then in addition to and without limiting any of Lender's rights and remedies hereunder and under the other Loan Documents and as otherwise available at law or in equity:

(a) Lender may, at its option, without waiving such Event of Default and without regard to the adequacy of the security for the Debt, either in person or by agent, without bringing any action or proceeding, or by a receiver appointed by a court, without taking possession of the Property in its own name, demand, sue for, direct tenants to pay Rents directly into the Clearing Account or otherwise collect and receive all Rents, including those past-due and unpaid, for application to the payment of the Debt in accordance with the terms of the Loan Documents, and Lender may enter into, and to the extent that Borrower would have the right to do so, cancel, enforce or modify any Lease. The exercise by Lender of the option granted it in this Section 5(a) and the collection of the Rents and the application thereof as herein provided shall not be considered a waiver of any Event of Default.

(b) Borrower hereby acknowledges and agrees that payment of any item of Rent by a Person to Lender as hereinabove provided shall constitute payment in full of such item of Rent by such Person, as fully and with the same effect as if it had been paid to Borrower.

(c) Lender in respect of the Leases and Rents shall have all of the rights and remedies of a secured party under the Uniform Commercial Code as in effect in the State in which such rights and remedies are asserted as described in Section 12(b) hereof to the extent of such rights thereunder and additional rights and remedies to which a secured party is entitled under the laws in effect in any jurisdiction where any rights and remedies hereunder may be asserted.

6.  **Application of Rents and Proceeds.** After the occurrence and during the continuance of an Event of Default, Rents received or held by Borrower or Lender shall be applied in accordance with the terms of the Loan Documents.

7.  **Attorney-in-Fact.** Upon the occurrence and during the continuance of any Event of Default, Borrower hereby appoints Lender the attorney-in-fact of Borrower to take any action and execute any instruments that Borrower is obligated, or has covenanted and agreed under the Loan Agreement or the other Loan Documents to take or execute, which appointment as attorney-in-fact is irrevocable and coupled with an interest. Without limiting the generality of the foregoing provisions of this Section 7, upon the occurrence and during the continuance of an Event of Default, Borrower does hereby irrevocably appoint Lender as its attorney-in-fact with full power, in the name and stead of Borrower to demand, collect, receive and give complete acquittance for any and all of the Rents now due or that may hereafter become due, and at Lender's discretion, to file any claim, to take any other action, to institute any proceeding or to make any settlement of any claim, either in its own name or in the name of Borrower or otherwise, which Lender may deem necessary or desirable in order to collect and enforce the payment of Rents.

8.  **Termination.** Lender, by the acceptance of this Assignment, agrees that when all of the Debt shall have been paid in full (as evidenced by the reconveyance of the Security Instrument), this Assignment shall terminate, and Lender shall execute and deliver to Borrower, upon such termination such instruments of termination or re-assignment and Uniform Commercial Code termination statements, all without recourse and without any representation or warranty whatsoever, as shall be reasonably requested by Borrower.

9.  **Expenses.** Borrower agrees to pay to Lender all third party out-of-pocket expenses (including reasonable expenses for attorneys' fees and costs of every kind) of, or incident to, the

enforcement of any of the provisions of this Assignment or performance by Lender of any obligation of Borrower hereunder which Borrower has failed or refused to perform.

**10.    Further Assurances.**  Borrower agrees that, from time to time upon the written request of Lender (in its reasonable discretion), it will give, execute, deliver, file and/or record any financing statements, notice, instrument, document, agreement or other papers and do such other acts and things that may be necessary and desirable to create, preserve, perfect or validate this Assignment, to enable Lender to exercise and enforce its rights hereunder with respect to this Assignment or to otherwise carry out the purposes and intent of this Assignment.

**11.    No Obligation by Lender.**  By virtue of this Assignment, Lender shall not be obligated to perform or discharge, nor does it hereby undertake to perform or discharge, any obligation, duty or liability under any of the Leases.  This Assignment shall not operate to constitute Lender as a lender in possession of the Property or to place responsibility for the control, care, management or repair of the Property upon Lender, nor shall it operate to make Lender responsible or liable for any waste committed on the Property by any tenant or other party in possession or for any dangerous or defective condition of the Property or for any negligence in the management, upkeep, repair or control thereof.

**12.    Miscellaneous.**

(a)    No failure on the part of Lender or any of its agents to exercise, and no course of dealing with respect to, and no delay in exercising, any right, power or remedy hereunder shall operate as a waiver thereof; nor shall any single or partial exercise by Lender or any of its agents of any right, power or remedy hereunder preclude any other or further exercise thereof or the exercise of any other right, power or remedy.  Subject to Section 16 hereof, the remedies herein are cumulative and are not exclusive of any remedies provided by law.

(b)    WITH RESPECT TO MATTERS RELATING TO THE CREATION, PERFECTION AND PROCEDURES RELATING TO THE ENFORCEMENT OF THE LIENS AND SECURITY INTERESTS CREATED BY THIS ASSIGNMENT, THIS ASSIGNMENT SHALL BE GOVERNED BY, AND BE CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE IN WHICH THE PROPERTY IS LOCATED, IT BEING UNDERSTOOD THAT, EXCEPT AS EXPRESSLY SET FORTH ABOVE IN THIS SECTION AND TO THE FULLEST EXTENT PERMITTED BY THE LAW OF SUCH STATE, THE LAW OF THE STATE OF NEW YORK SHALL GOVERN ALL MATTERS RELATING TO THIS ASSIGNMENT AND THE OTHER LOAN DOCUMENTS AND ALL OF THE INDEBTEDNESS OR OBLIGATIONS ARISING HEREUNDER OR THEREUNDER.

(c)    Subject to Section 16 hereof, all rights and remedies set forth in this Assignment are cumulative, and Lender may recover judgment thereon, issue execution therefor, and resort to every other right or remedy available at law or in equity, without first exhausting and without affecting or impairing the security of any right or remedy afforded hereby; and no such right or remedy set forth in this Assignment shall be deemed exclusive of any of the remedies or rights granted to Lender in any of the Loan Documents.  Subject to Section 16 hereof, nothing contained in this Assignment shall be deemed to limit or restrict the rights and remedies of Lender under the Loan Agreement or any of the other Loan Documents.

(d)    Until the indebtedness and all other obligations secured by the Loan Documents is paid in full, Borrower will, upon request, deliver from time to time to Lender executed originals to the extent available, otherwise photocopies certified by Borrower as true, correct and complete, of executed originals, of any and all existing Leases to which Borrower is a party, and executed originals, or photocopies of executed originals, so certified by Borrower, if an executed original is not available, of all

other and future Leases to which Borrower is a party, and upon request of Lender, will specifically transfer and assign to Lender such other and future Leases upon the same terms and conditions as herein contained.

(e)    Borrower represents that it: (i) has been advised that Lender engages in the business of real estate financings and other real estate transactions and investments which may be viewed as adverse to or competitive with the business of Borrower or its affiliates; (ii) is represented by competent counsel and has consulted counsel before executing this Assignment; and (iii) has relied solely on its own judgment and on its counsel and advisors in entering into the transaction(s) contemplated hereby without relying in any manner on any statements, representations or recommendations of Lender or any parent, subsidiary or affiliate of Lender.

13.    **No Oral Change.**  This Assignment may not be amended except by an instrument in writing signed by Borrower and Lender.

14.    **Successors and Assigns.**  Borrower may not assign its rights or obligations under this Assignment except as permitted under the Loan Agreement. Subject to the foregoing, this Assignment shall be binding upon, and shall inure to the benefit of, Borrower and Lender and their respective successors and assigns.

15.    **Notices.**  All notices, demands, requests and other communications provided for herein shall be given or made in writing in the manner specified in the Loan Agreement.

16.    **Exculpation.**  It is expressly agreed that recourse against Borrower for failure to perform and observe its obligations contained in this Assignment shall be limited as and to the extent provided in Section 10.1 of the Loan Agreement.

17.    **State-Specific Provision.**  Subject to the terms and provisions of the Loan Documents, the maximum amount of principal indebtedness secured by this Assignment at the time of execution hereof or which under any contingency may become secured by this Assignment is $170,000,000 plus (i) all interest accrued thereon (including all interest at the regular interest rate and default interest rate), (ii) all late charges related thereto, (iii) taxes, charges or assessments which may be imposed by law upon the Property, (iv) premiums on insurance policies covering the Property, (v) actual expenses incurred in upholding the lien of this Assignment, including, but not limited to, (A) the reasonable and documented out-of-pocket expenses of any litigation to prosecute or defend the rights and lien created by this Assignment and (B) any amount, cost or charges to which Lender becomes subrogated, upon payment, whether under recognized principles of law or equity, or under expressed statutory authority. In the event of any inconsistencies between the other terms and conditions of this Assignment and this Section 17, the terms and conditions of this Section 17 shall control and be binding.

[THE REMAINDER OF THE PAGE IS INTENTIONALLY BLANK]

IN WITNESS WHEREOF, this Assignment has been duly executed by Borrower as of the day and year first above written.

**BORROWER:**

GC SHL, LLC,
a Delaware limited liability company

By: _____
Name:   Valerie Yip
Title:    Vice President

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**  CIVIL CODE § 1189

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA        )
                           ) §
County of San Francisco    )

On **September 28, 2017**, before me, **Dennis Collins, Notary Public**, personally appeared **Valerie Yip**, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature of Notary Public

DENNIS COLLINS
Commission # 2070476
Notary Public - California
San Francisco County
My Comm. Expires Jun 6, 2018

<u>**Exhibit "A"**</u>
[LEGAL DESCRIPTION]

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, City, County and State of New York, and being more particularly described as follows:

BEGINNING at a point on the South side of West Thirteenth Street, distant one hundred feet easterly from the corner formed by the intersection of the southerly side of West Thirteenth Street with the easterly side of Tenth Avenue;

RUNNING THENCE southerly and parallel with the easterly side of Tenth Avenue fifty-one feet eight and one-quarter inches;

RUNNING THENCE westerly parallel with the southerly side of West Thirteenth Street twenty-one feet three inches;

RUNNING THENCE southerly along a line, which on its easterly side forms an angle of eighty-nine degrees forty-seven minutes forty seconds with the last mentioned course, fifty-one feet six and three-quarter inches to the centerline of the block;

RUNNING THENCE easterly and along the said centerline of the block one hundred twenty-one feet one inch more or less to a point distant one hundred feet West from the westerly side of Washington Street;

THENCE in southerly direction, parallel with said westerly side of Washington Street, a distance of 103 feet 3 inches to the northerly side of Little West Twelfth Street;

THENCE in an easterly direction along the northerly side of Little West Twelfth Street, a distance of 100 feet 0 inches to a point where said side meets the easterly side of Washington Street;

THENCE in a northerly direction along the westerly side of Washington Street a distance of 206 feet 6 inches to the southerly side of West Thirteenth Street;

THENCE in a westerly direction and along the southerly side of West Thirteenth Street a distance of 200 feet 0 inches to the point or place of BEGINNING.

TOGETHER with that certain easement for light, air and view as set forth in paragraph 2(a)(ii) of that Zoning Lot Development Agreement dated as of 1/7/2005 by and between 55 Little West 12 St. Corp and AB Green Gansevoort, LLC, as nominee for and on behalf of Gansevoort Standard Hotel Partners LLC recorded 2/2/2005 under CRFN 2005000067016.

| NYC DEPARTMENT OF FINANCE<br>OFFICE OF THE CITY REGISTER | <br>2017110100945003002SD17D |
|---|---|
| **SUPPORTING DOCUMENT COVER PAGE** | **PAGE 1 OF 1** |

**Document ID:** 2017110100945003    Document Date: 10-27-2017    Preparation Date: 11-06-2017
Document Type: ASSIGNMENT OF LEASES AND RENTS

**SUPPORTING DOCUMENTS SUBMITTED:**

| | Page Count |
|---|---|
| 255 MORTGAGE TAX EXEMPT AFFIDAVIT | 1 |

# AFFIDAVIT UNDER SECTION 255 OF THE
# TAX LAW OF THE STATE OF NEW YORK

STATE OF CALIFORNIA )
                    ) ss:
COUNTY OF SAN FRANCISCO )

VALERIE YIP, being duly sworn, deposes and says that:

1. I am the VICE PRESIDENT (title) of GC SHL, LLC, a Delaware limited liability company ("Mortgagor"). Mortgagor is the owner of premises located at 848 Washington Street, New York, New York 10014, which premises are encumbered by that certain Consolidated, Amended and Restated Mortgage, Assignment of Leases and Rents Security Agreement (the "Consolidation Agreement") dated the date hereof between Mortgagor and Natixis Real Estate Capital LLC, a Delaware limited liability company (together with its successors and assigns, the "Lender"). TO BE RECORDED SIMULTANEOUSLY HEREWITH

2. Mortgagor has executed an Assignment of Leases and Rents (the "Assignment") for the benefit of Lender.

3. The Assignment presented herewith for recording does not evidence any new indebtedness and does not create or secure any new or further indebtedness other than the aggregate principal indebtedness secured by the Consolidation Agreement.

4. There have been no reloans or readvances under the Consolidation Agreement.

WHEREFORE, deponent respectfully requests that the Assignment tendered herewith for recording be declared exempt from taxation pursuant to the provisions of Section 255 of Article XI of the Tax Law of the State of New York.

Dated: OCTOBER 27, 2017

Name: _____

Sworn to before me this the
28th day of SEPTEMBER, 2017

_____
Notary Public

DENNIS COLLINS
Commission # 2070476
Notary Public - California
San Francisco County
My Comm. Expires Jun 6, 2018

~#4811-4073-8121 v.4~